**Gleniss S. SCHONHOLZ, Plaintiff,**

**v.**

**LONG ISLAND JEWISH MEDICAL CENTER, Defendant.**

**No. 93 CV 2549.**

United States District Court, E.D. New York.

Feb. 3, 1995.

William E. Zuckerman, Morrison & Foerster, New York City, for plaintiff.

Charles G. Moerdler, Stroock & Stroock & Lavan, New York City, for defendant.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

Defendant Long Island Jewish Hospital ("LIJ") and plaintiff Gleniss S. Schonholz cross-move under Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment. Schonholz brought this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits allegedly owed to her under her former employer's severance benefit plan. LIJ seeks dismissal of Schonholz's claims for lack of jurisdiction and for failure to state a claim. Schonholz cross-moves for summary judgment, arguing that all of the facts necessary to decide in her favor have been established and that she is entitled to summary judgment as a matter of law.

## BACKGROUND

Gleniss S. Schonholz was employed by the Long Island Jewish Medical Center from 1980 until 1993. Hired as a Divisional Administrator, by 1987, Schonholz had been promoted to the position of Senior Vice President and Chief Operating Officer of LIJ. During 1991 and 1992, hospital management changed and a new LIJ Board Chairman was appointed. Due to the incompatibility of Schonholz and the new Chairman, the President and CEO of LIJ, Dr. Robert K. Match, determined that it was in the best interest of the hospital for Schonholz to resign. Dr. Match and Schonholz met some time between December 10 and December 18, 1992, and agreed that Schonholz would submit her resignation to become effective April 1, 1993. He formalized his request in a letter dated December 18, 1992. In his letter, Dr. Match explicitly stated that Schonholz would be eligible for severance pay benefits as detailed in a memorandum dated May 3, 1991. As requested, by letter dated December 22, 1992, Schonholz submitted her resignation. Nine days before the effective date of Schonholz's termination, on March 23, 1993, the LIJ Board revoked the severance pay program (the "Program"). On June 11, 1993, Schonholz commenced this action against LIJ to recover severance benefits.

## DISCUSSION

I. *Subject Matter Jurisdiction*

LIJ challenges the sole basis of this Court's jurisdiction, asserting that the LIJ Program was not an "employee welfare benefit plan" within the meaning of ERISA. Severance benefit programs generally are covered by ERISA as they are expressly included in the definition of "employee welfare benefit plan" under 29 U.S.C. 1002(1). *See Bradwell v. GAF Corp.*, 954 F.2d 798, 800 n. 1 (2d Cir.1992). LIJ argues, however, that the LIJ Program falls within the exception established by the Supreme Court in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), where the Court held that a single lump-sum severance payment payable only on the occurrence of a single event did not implicate ERISA. In order to fall within ERISA preemption, a benefit plan must require ongoing administration separate from other benefit plans administered by the employer.

LIJ argues that, because Dr. Match offered Schonholz a lump-sum payment of twelve months' salary in lieu of biweekly installments as provided by the Program, the Program falls within the *Fort Halifax* exception and no longer qualifies as an ERISA plan. This argument, however, ignores other provisions of the Program. In addition to the first twelve months' salary, the Program provided another six months of salary for terminated employees with Schonholz's length of service who had not yet found "commensurate" employment after a year. The last six months' salary was to be paid biweekly until commensurate employment was found or the additional six months had expired, whichever occurred first. The Pro-

gram defines commensurate employment as employment placing her at "h[er] former organizational level and scope of responsibility."

In determining what is and what is not an ERISA plan, courts have looked to the degree of managerial discretion in the award of benefits. *See, e.g., James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463 (2d Cir. 1993) (automatic lump-sum payment of 60 days of salary to employees terminated due to consolidation not an ERISA plan); *Fontenot v. NL Industries*, 953 F.2d 960 (5th Cir.1992) (single lump-sum payment of 3 years' salary to executives terminated following takeover not an ERISA plan). *Compare Bogue v. Ampex Corp.*, 976 F.2d 1319, 1321 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993) (severance benefits payable to 10 key employees if not offered "substantially equivalent" employment by buyer is plan governed by ERISA). "To do little more than write a check hardly constitutes the operation of a benefit plan." *Fort Halifax*, 482 U.S. at 12, 107 S.Ct. at 2218. The LIJ Program, had it not been revoked prior to Schonholz's termination, indisputably would have required its administrator to do more than cut a single severance check. As in *Bogue*, even though the potential number of participants was small, and its activation uncertain[1], the Program's administration would have required "a case-by-case, discretionary application of its terms." *Bogue*, 976 F.2d at 1323. The Court finds that the LIJ Program was an employee welfare benefit plan within the meaning of ERISA. Accordingly, the Court has jurisdiction over this action.

## II. *Schonholz's ERISA Claims*

■ This Court denied LIJ's prior Rule 12(b)(6) motion to dismiss on this count solely because LIJ had failed to allege that LIJ had revoked the Program in writing. *Schonholz*

*v. Long Island Jewish Medical Ctr.*, 858 F.Supp. 350, 353 (E.D.N.Y.1994). LIJ now has established that its revocation of the Program was in writing and Schonholz admits that she had both oral and written notification of the LIJ Board's revocation of the Program prior to the effective date of her termination. As stated in this Court's prior opinion, severance plans are not vested under ERISA. *Id.* Thus, the Board's revocation was effective and Schonholz may not recover pursuant to this theory.

### a. *Breach of Fiduciary Duties Under ERISA*

As a second theory, Schonholz argues that she is entitled to recover because the LIJ Board revoked the Program in bad faith and in violation of its fiduciary duty to Schonholz as a beneficiary of the Program. She contends that she is entitled to recover severance benefits because the discontinuation of the Program was not a business decision but was punitive and directed against her individually. Schonholz cites a single case, *Dependahl v. Falstaff Brewing Corp.*, 491 F.Supp. 1188 (E.D.Mo.1980), *aff'd in part, rev'd in part*, 653 F.2d 1208 (8th Cir.1981), for the proposition that an employee may recover benefits where an employer modifies or terminates its benefit plan in light of an impending personnel action, thus depriving an employee of benefits to which she otherwise would be entitled. In *Dependahl*, the court held that an employer violated his fiduciary duty to his employees when he eliminated a severance plan in contemplation of a mass firing.

■ *Dependahl* stands against the weight of authority. An employer unilaterally may amend or eliminate a severance plan at any time without violating ERISA requirements. *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561

---

**1.** The Program was only available to members of the President's Council who would be involuntarily terminated. LIJ makes much of the fact that no financial projections had been made prior to the Program's promulgation, nor were any administrative procedures put in place following the distribution of the May 3, 1991 memorandum. Once established, however, ERISA pro-

tects an employee's interest in a welfare benefit plan regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA. *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

(1988). Moreover, it may do so without consideration of its employees' interests. *Id.* "Virtually every circuit has rejected the proposition that ERISA's fiduciary duties attach to an employer's decision whether or not to amend an employee benefit plan." *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1161 (3d Cir.1990). Additionally, the Supreme Court has held that an action for breach of fiduciary duties imposed on plan administrators may be brought only on behalf of a plan itself and not, as Schonholz has here, for the benefit of an individual beneficiary. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Schonholz,* 858 F.Supp. at 354.

### III. *Schonholz's Common Law Claims*

■ Section 514(a) of ERISA explicitly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.A. § 1144 (1985). This preemption provision has been broadly construed and generally precludes common law actions which "relate to" employee pension and benefit programs. *See, e.g., Smith v. Dunham–Bush, Inc.* 959 F.2d 6 (2d Cir.1992) (ERISA preempts employee's breach of contract and promissory estoppel claims regarding oral promise of increased pension benefits); *Reichelt v. Emhart Corp.,* 921 F.2d 425, 431 (2d Cir.1990), *cert. denied,* 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991) ("ERISA preempts civil actions against employers for severance pay predicated on common-law contract principles").

#### a. *Contractual Vesting*

■ LIJ objects to the consideration of Schonholz's contract claim as this theory of relief was not articulated in plaintiff's amended complaint nor at any time prior to this motion. Without providing specifics, LIJ urges that Schonholz should not be allowed to pursue her contract argument as it would prejudice LIJ. Pleading in federal court, however, only requires a "short plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8, and it is not required for the plaintiff to identify a legal theory under which relief is sought. *Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir.1988); *Siegelman v. Cunard White Star,* 221 F.2d 189, 196 (2d Cir.1955). Further, the Court can see no prejudice to LIJ since, as LIJ itself notes, Schonholz's contract theory is merely a variant of her second cause of action for promissory estoppel. Therefore, Schonholz's contract claim has been adequately pleaded and is properly before the court.

Schonholz argues that the circumstances of her case fall within a line of cases which recognizes that, under ERISA, an employer contractually may waive its statutory right to modify or terminate benefits. *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488 (2d Cir.1988); *see also Wise v. El Paso Natural Gas Co.,* 986 F.2d 929 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993); *Alday v. Container Corp. of America,* 906 F.2d 660, 665 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Schonholz contends that Dr. Match's letter was such a waiver and that, as a result, her severance benefits vested at the time she tendered her resignation in December 1992.

■ However, Congress has mandated that, although an employer may establish by contract that certain benefits are vested, it may only do so in formal plan documents. Informal communications between an employer and its employees cannot modify the terms of an ERISA plan. 29 U.S.C. § 1102(b)(3). *See also Moore,* 856 F.2d at 492 ("an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries"). Clearly, Dr. Match's letter is not a formal plan document.

■ Further, even if the Court were to consider Dr. Match's letter to be a plan document, the letter does not explicitly waive LIJ's right to terminate benefits[2]. In order to override the statutory scheme which al-

---

2. The December 18, 1992 letter stated that "the terms of [Schonholz's] severance will be governed by the LIJ Medical Center personnel policies applicable to members of the President's Counsel, including the Severance Pay Program, dated May 3, 1991."

lows the employer an unqualified right to amend or terminate employee welfare benefits, any extra-ERISA commitment must be in "precise language denying the right to withdraw benefits." *Wise,* 986 F.2d at 938. Such is not the case here. Schonholz's claim amounts to an alternative theory of recovery under state common law and is, therefore, preempted by ERISA.

### b. *Promissory Estoppel*

Alternatively, Schonholz argues that LIJ should be estopped from denying her severance pay benefits because she reasonably believed and detrimentally relied on Dr. Match's representation regarding severance pay.

The Court of Appeals for the Second Circuit has recognized estoppel as a cause of action under ERISA in "extraordinary circumstances." *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (citing, *inter alia, Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1039 (2d Cir. 1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986)). Promissory estoppel requires (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained by the party asserting the estoppel by reason of her reliance. *See Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir. 1989); *Aquilio v. Police Benev. Assn. of N.Y. State Troopers,* 857 F.Supp. 190, 199 (N.D.N.Y.1994).

While Schonholz is able to show an unambiguous promise and reasonable, foreseeable reliance, she cannot demonstrate injury. Plaintiff argues that, in complying with Dr. Match's request to resign, she did not: (1) challenge her termination, (2) negotiate a more advantageous effective date for her termination, or (3) negotiate for more attractive payment and benefit terms. Schonholz was an employee at-will and, as such, had little or no leverage to challenge her termination or negotiate its terms. Moreover, although Schonholz contends in her brief that she was injured by submitting her resignation and agreeing to stay with LIJ for an additional three months, in her deposition she acknowledged that this practice was for the benefit of terminated employees to help them to secure employment elsewhere. She further contends that, had she not relied on Dr. Match's assurance of benefits under the LIJ Program, she would have negotiated a severance package as others had before her. LIJ states that they had been willing to negotiate an individual severance package with Schonholz after the Program was terminated but she chose to pursue this action instead. Even if one does not credit LIJ's statement, its past practice of paying severance to terminated employees did not bind LIJ to pay Schonholz severance. Schonholz's expectation of benefits under the LIJ Program and disappointment at its termination are not sufficient to constitute detrimental reliance.

### CONCLUSION

There being no question of material fact, LIJ's motion for summary judgment for lack of subject matter jurisdiction is DENIED. Its motion for summary judgment for failure to state a claim is GRANTED and this action is DISMISSED in its entirety. Schonholz's cross-motion is DENIED.

SO ORDERED.