274 F.3d 76 (2nd Cir. 2001)
 FRANCIS J. DEVLIN, Plaintiff,
RICHARD G. KUNKEL, JOSEPH G. MURPHY, DANIEL ROSENBERG, DANIEL G. SANDERS, JAMES C. SNYDER, ANTHONY J. TRUHON, JOHN WANDZILAK, JR., JOHN F. BYRNES, WILLIAM A. DE MAURO, MICHAEL ELKINS, JERROLD I. EHRLICH, BEVERLY GLICKERMAN, GERALD HARRISON, JOHN F. LUCZUN, JOHN F. MULDOON, HARRY E. NICHOLSEN, RONALD D. ZAMMIT, STERLING E. CATHEY, LOUIS L. LEVINE, ELLEN H. PROPP, JOHN L. SHURTLEFF, JULES K. LAMBEK, and EUGENE F. HARRISON, Plaintiffs-Appellants,
v.
EMPIRE BLUE CROSS AND BLUE SHIELD, Defendant-Appellee.
 No. 00-9469
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: June 20, 2001
Decided: December 6, 2001
Amended: February 14, 2002.
 
 [Copyrighted Material Omitted]
 MEREDITH H. SAVITT, Hite & Savitt, Albany, New York, for Appellants.
 GARY H. GLASER, Seyfarth Shaw, New York, New York (Craig P. Pacernik, on the brief), for Appellee.
 BEFORE: JACOBS, F.I. PARKER, and SOTOMAYOR, Circuit Judges.
 F.I. PARKER, Circuit Judge:
 
 
 1
 In 1998, defendant-appellee Empire Blue Cross and Blue Shield ("Empire") significantly lowered the amount of life insurance provided to retirees.[1] Plaintiffs-appellants are former employees of Empire who retired between 1989 and 1993. Plaintiffs seek to enforce the terms of the life insurance plan provided by Empire to its retirees, as those terms existed during their employment with Empire. In addition to their claim for injunctive and declaratory relief under 502(a)(1) & (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1132 (a)(1) & (3), plaintiffs assert claims for monetary relief under ERISA for wrongful reduction of benefits, for breach of fiduciary duty, and for failure to provide information summaries in a timely fashion. Plaintiffs also assert a claim based on promissory estoppel.
 
 
 2
 The district court (Barbara S. Jones, Judge) rejected plaintiffs' claims for relief, principally concluding that the relevant ERISA plan documents did not provide plaintiffs with a vested life insurance benefit at the previous level of coverage. Byrnes v. Empire Blue Cross and Blue Shield, No. 98 CIV. 8520(BSJ), 2000 WL 1538605, at *4-*9 (S.D.N.Y. Oct. 18, 2000). On appeal, plaintiffs contend that the relevant plan documents provide them with a vested life insurance benefit in an amount equivalent to their final annual salary. Additionally, plaintiffs contend that they are entitled to recover benefits under a theory of promissory estoppel. Finally, plaintiffs assert a breach of fiduciary duty claim under ERISA 404(a), 29 U.S.C. 1104 (a).
 
 
 3
 For the reasons set forth below, we agree with plaintiffs that the relevant plan documents can reasonably be interpreted to provide a vested life insurance benefit. We also agree that summary judgment was inappropriately granted to defendant on the promissory estoppel, breach of fiduciary duty, and penalty claims. We therefore vacate the district court's decision granting summary judgment to Empire and remand to the district court for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 4
 Plaintiffs were all employed by Empire for various lengths of time, with some plaintiffs having worked at Empire for over 40 years. All retired from Empire between 1989 and 1993. Some of these plaintiffs retired pursuant to an early retirement incentive program announced in 1992, known as the Voluntary Separation Opportunity Program ("VSOP"). Others retired pursuant to a similar program offered in 1993, known as the Voluntary Incentive Program ("VIP"). The remaining plaintiffs retired pursuant to Empire's normal retirement program.
 
 
 5
 Throughout plaintiffs' employment, Empire provided life insurance benefits at no cost to its employees and retirees. These benefits were described by Empire in a summary plan description ("SPD") distributed to employees prior to 1987:
 
 
 6
 All graded employees, hired on a full-time basis, after a probationary period become a member of our Group Life Insurance Plan, while all full-time Executive Compensation Program are covered upon employment.
 
 
 7
 In addition, retired employees, after completion of twenty years of full-time permanent service and at least age 55 will be insured.
 
 
 8
 . . .
 
 
 9
 Your life insurance is twice your annual salary, excluding overtime pay.
 
 
 10
 . . .
 
 
 11
 For eligible retirees, the group life insurance will be reduced 10% on the retirement date and in equal amounts on the next four anniversaries of the retirement date. That is, on the fourth anniversary of the employee's retirement, benefits will have been reduce [sic] 50% of the pre-retirement level for the remainder of their lives [sic].
 
 
 12
 J.A. at 522 (emphasis added).[2] This SPD contained no qualification or condition on these benefits, nor did it contain any indication that Empire would or could later reduce or eliminate them.
 
 
 13
 In 1987, Empire created and distributed an employee handbook, entitled "Your Handbook," which also included a summary plan description of Empire's group life insurance benefits. Like the earlier plans, this plan provided no-cost life insurance benefits to employees at an amount equal to two times the employee's annual salary. For retirees, the plan provided that:
 
 
 14
 If you retire . . . at age 65 or older with 10 or more years of full-time service; or at age 55 or older with 20 or more years of full-time service; or at any age, with 30 or more years of full-time service, your basic life insurance will be reduced by 10% as of your retirement date, and by an equal amount on each of the next four anniversaries of your retirement date so that 50% of your life insurance coverage remains in force for the rest of your life, at no cost to you.
 
 
 15
 J.A. at 73. The last sentence on the last page of this document informs employees that "other important information about [their] Group Life Insurance Plan and its administration can be found in the section entitled 'Benefit Administration.'" J.A. at 79. Contained in the "Benefit Administration" section is the following statement:
 
 
 16
 Empire Blue Cross and Blue Shield maintains the Plans for the exclusive benefits [sic] of its employees. The company expects and intends to continue the Plans in your Benefits Program indefinitely, but reserves its right to end each of the Plans, if necessary. The company also reserves its right to amend each of the Plans at any time.
 
 
 17
 J.A. at 83. This reservation of rights appears for the first time in 1987 in "Your Handbook." As noted, the earlier plan descriptions contain no similar language.
 
 
 18
 In 1992, Empire implemented the VSOP, a voluntary workforce reduction program. In connection with this program, Empire distributed materials outlining eligibility and program benefits. Participation in this program required eligible employees to "voluntarily resign from Empire in exchange for certain benefits." J.A. at 536. These "certain benefits" included life insurance coverage, on substantially the same terms as provided in the earlier plans. While the VSOP's description of health insurance benefits included an explicit reservation of Empire's right to adjust coverage, the description of life insurance benefits did not. In the "Administration" section of these materials, however, Empire "reserved the right to amend and/or terminate the VSO Program at any time for any purpose." J.A. at 540. This section also warned that "Empire may or may not adopt new or modified programs or benefits or take other actions in the future that, depending on your individual circumstances, may be more or less advantageous to you than the current Program." Id.
 
 
 19
 In 1993, Empire offered the VIP, another early retirement incentive program similar to the VSOP. A document distributed in connection with this program informed employees that "your insurance benefits may be extended to you for your lifetime . . .,depending on your age and years of service. You will be eligible for retiree insurance benefits if you normally qualify or if you would qualify by adding five years to your age and five years to your service under the VIP." J.A. at 559. The VIP provided for life insurance benefits virtually identical to those described in earlier plans; that is, benefits were reduced by 10% on retirement and for four subsequent years, until reaching one's annual salary. Like the VSOP materials, the VIP's healthcare insurance description contained a reservation of rights, but the description of life insurance benefits did not. The VIP's Administration section included the following language:
 
 
 20
 Empire reserves the right to amend and/or withdraw the VIP at any time for any purpose with respect to any employee, up to the date on which that employee's Resignation and General Release and Covenant Not to Sue becomes effective. Empire also reserves the right to announce new and different plans and programs as business needs require.
 
 
 21
 J.A. at 562.
 
 
 22
 In late 1997, because of financial difficulties and in an effort to "remake itself as a corporation in the managed care environment and remain economically competitive," Empire reviewed its benefits plans. On June 24, 1998, Empire announced that the "Board of Directors voted to adopt a number of new benefit provisions for current employees [and] retirees" effective January 1, 1999. J.A. at 572. These new benefits provisions affected individuals who retired from Empire after January 1, 1989 and before June 23, 1998. Among the changes instituted by Empire was a reduction in life insurance coverage to a flat $ 7,500.
 
 
 23
 Many retirees wrote to Empire, demanding an explanation for this reduction in benefits and to obtain more information about Empire's decision-making process. In response, Empire informed these retirees that the reduction was necessary for Empire's financial health and that Empire had clearly "reserved the right to modify or reduce benefits in its sole discretion[.]" J.A. at 626.
 
 
 24
 In late 1998 and early 1999, two groups of retirees filed suit in the Southern District of New York, asserting several ERISA claims as well as a claim of promissory estoppel. In June 1999, these cases were consolidated for all purposes. Essentially, these retirees claimed that the employee handbooks distributed prior to 1987 contain promises of lifetime life insurance benefits in an amount equal to their annual salary.
 
 
 25
 Upon cross-motions for summary judgment, the district court rejected plaintiffs' claim for benefits. First, the district court concluded that the relevant plan documents were either the 1987 "Your Handbook," the VSOP documents, or the VIP documents, depending on each plaintiffs' retirement program. Byrnes, 2000 WL 1538605, at *7. According to the district court, because each of these documents contained "unambiguous reservation of rights clauses . . .,plaintiffs' rights had not vested and Empire was free as a matter of law to reduce plaintiffs' retiree life insurance benefit to $ 7500." Id. at *8. The district court similarly rejected plaintiffs' breach of fiduciary duty and penalty claims under ERISA, concluding that Empire had acted in accordance with and had properly provided its employees with the relevant plan documents. Id. at *9-*10. The district court also granted summary judgment to Empire on plaintiffs' promissory estoppel claim, holding that plaintiffs had failed to "allege[] the extraordinary circumstances necessary to state a claim of promissory estoppel under ERISA." Id. at *10. Judgment was entered for the defendant, and this appeal followed.
 
 II. DISCUSSION
 
 26
 Plaintiffs contend on appeal that the pre-1987 SPDs contained a promise of lifetime life insurance benefits at the annual salary level and that these benefits vested in the plaintiffs when they qualified for retirement by attaining age fifty-five and completing at least twenty years of service. Additionally, plaintiffs contend that the doctrine of promissory estoppel bars Empire from unilaterally reducing the life insurance benefits. Finally, plaintiffs assert that Empire breached its fiduciary duty by providing them with false and misleading plan information.
 
 
 27
 We review the grant of a summary judgment motion de novo, and "reversal is required if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 77 (2d Cir. 1996) (citations and internal quotation marks omitted).
 
 A. Contractual Vesting
 
 28
 Plaintiffs claim under ERISA 502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B), which permits a civil action by a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Essentially, plaintiffs assert under this section a "contractual right under a benefit plan." Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999).
 
 
 29
 "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 131 L. Ed. 2d 94, 115 S. Ct. 1223 (1995); see also Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999) (stating the general rule that under ERISA an employer welfare plan is not vested and that an employer has the right to terminate or unilaterally amend the plan at any time).[3] "If a [plan] document unambiguously indicates whether retiree . . . benefits are vested, the unambiguous language should be enforced." Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp., 116 F.3d 976, 980 (2d Cir. 1997) ("Multifoods"). Thus, even though Empire is "generally free" to modify its life insurance plan, if Empire promised vested benefits, those benefits will be enforced.
 
 
 30
 To ascertain if Empire made such a promise, we must examine the relevant ERISA plan documents. Plaintiffs urge us to review the pre-1987 SPDs distributed by Empire, which Empire concedes contained no reservation of rights to modify the benefits and which, plaintiffs argue, evince Empire's intent to vest lifetime life insurance benefits upon their eligibility for retirement. Both pre-1987 SPDs include language indicating that life insurance coverage after retirement would remain at a level equivalent to plaintiffs' annual salaries "for the remainder of their lives."
 
 
 31
 The district court concluded that this language did "not express an intent to vest in the plaintiffs a retiree life insurance benefit before they retired." Byrnes, 2001 WL 1538605, at *5. Without such "clear and express" language, the district court reasoned, the only reasonable interpretation of the pre-1987 SPDs was that life insurance benefits would be vested only if plaintiffs retired prior to 1987, when Empire issued "Your Handbook" which included an express reservation of rights clause. Id.
 
 
 32
 In reaching its conclusion, the district court relied on Wise v. El Paso Natural Gas Co., 986 F.2d 929, 938 (5th Cir. 1993). We understand the district court's temptation to rely on the Fifth Circuit's decision in Wise as it presents facts similar to those presented here. In Wise, the defendant-employer issued SPDs that described healthcare benefits for retirees but failed to include any express reservation of the right to amend or terminate the Plan's benefit provisions. Id. at 932. When the defendant realized this failure, it issued new SPDs which "laid the groundwork for future changes" by including a reservation clause. Id. at 933. Shortly after issuing these new SPDs, the defendant announced the termination of healthcare benefits for those retiring after a certain cut-off date. Id. The Fifth Circuit affirmed the grant of summary judgment to the employer, reasoning that it had not contractually vested its employees with free lifetime healthcare coverage because "such extra-ERISA commitments must be found in the plan documents and must be stated in clear and express language." Id. at 937 (emphasis added). Wise explained further:
 
 
 33
 Aside from the fact that the underlying documents and the later SPDs did place employees on firm notice of the coming change, we find no reason or authority to conclude that pre-1985 silence in the SPDs is somehow tantamount to an affirmative contractual commitment and that El Paso's earlier SPDs impliedly cede the right to later amend or discontinue coverage. While clear and unambiguous statements in the summary plan description are binding, the same is not true of silence. There is nothing in the way of context, inference, or presumption to persuade us otherwise. Contractual vesting is a narrow doctrine. To prevail, Plaintiffs must assert strong prohibitory or granting language; mere silence is not of itself abrogation.
 
 
 34
 Id. at 938.
 
 
 35
 Notwithstanding these similarities, the district court erred in relying on the standard for contractual vesting set forth in Wise. Wise requires a plaintiff opposing summary judgment to show a promise that is "clear and express" and to show "precise language denying the right to withdraw benefits." Id. at 937-38. We take a different view:
 
 
 36
 In this Circuit, to reach a trier of fact, an employee does not have to "point to unambiguous language to support [a] claim. It is enough [to] point to written language capable of reasonably being interpreted as creating a promise on the part of [the employer] to vest [the recipient's] . . . benefits."
 
 
 37
 Multifoods, 116 F.3d at 980 (quoting Schonholz, 87 F.3d at 78). Our standard permits a plaintiff to get to a trier of fact based on ambiguous plan language, while the Wise standard requires clear and unambiguous language.
 
 
 38
 We have rejected Wise twice before. In Schonholz, we concluded that the plaintiff was not required to "point to unambiguous language to support her claim" and criticized the district court for holding that an employer's commitment to vest benefits "must be in 'precise language denying the right to withdraw benefits.'" Schonholz, 87 F.3d at 78 (quoting Schonholz v. Long Island Jewish Med. Ctr., 889 F. Supp. 610, 615 (E.D.N.Y. 1995), which in turn quoted Wise, 986 F.2d at 938)). In Multifoods, we described a circuit split as to the summary judgment rules for contractual vesting, noting that Wise was among those requiring "clear and express language." Multifoods, 116 F.3d at 980. After noting the circuit split, we emphasized that, in this Circuit, a plaintiff need only "'point to written language capable of reasonably being interpreted as creating a promise'" to survive an employer's summary judgment motion. Id. (quoting Schonholz, 87 F.3d at 78).
 
 
 39
 Under our standard, then, the plaintiffs here must first identify "specific written language that is reasonably susceptible to interpretation as a promise." Joyce, 171 F.3d at 134. Plaintiffs direct our attention to two sentences within the pre-1987 SPDs. The first provides that "retired employees, after completion of twenty years of full-time permanent service and at least age 55 will be insured." J.A. at 522 (emphasis added). We believe that this statement can be reasonably read as promising such insurance so long as employees retire after age 55 and have provided full-time permanent service to Empire for at least twenty years. This provision can be construed as an offer that specifies performance as the means of acceptance -- sometimes referred to as an offer for a unilateral contract -- and promises lifetime life insurance benefits upon performance.[4] Therefore, by "performing" (that is, working for at least twenty years until attaining the age of 55), the plaintiffs accepted this offer. Restatement (Second) of Contracts 45(1) (1981). Where the offeror did not explicitly reserve the power to revoke, such an offer cannot be revoked once the offeree has begun to perform. See id. 45 & cmt. d ("The beginning of performance . . . completes the manifestation of mutual assent and furnishes consideration.").[5] Therefore, Empire's reliance on its 1987 SPD, "Your Handbook," for its reservation of the right to modify the life insurance benefits is unavailing. We reject Empire's argument because after the plaintiffs began performance, pursuant to the pre-1987 SPDs, Empire was not free to revoke.[6]
 
 
 40
 The second statement contained in the pre-1987 SPDs which plaintiffs invoke provides that life insurance benefits "will remain at [the annual salary level] for the remainder of their lives." J.A. at 527 (emphasis added). Such "lifetime" language, we believe, is sufficient to create a triable issue of fact as to whether Empire promised to vest retiree life insurance benefits at the stated level. See Bidlack v. Wheelabrator Corp., 993 F.2d 603, 605-08 (7th Cir. 1993) (en banc)(Posner, J.) (allowing case to go to jury based on written language stating that "both you and your spouse will be covered for the remainder of your lives"); cf. Joyce, 171 F.3d at 135 (rejecting contractual vesting argument where document did not include "language that affirmatively operates to create the promise of vesting" but noting that a promise of benefits for one's lifetime gives rise to a triable fact issue, citing Bidlack, 993 F.2d at 605-08); Multifoods, 116 F.3d at 982 (finding that no vesting where "statements simply indicate who would pay the costs of the plan" but "in no way indicate that Multifoods would continue to pay the cost of the plan for the retirees' lifetime.").
 
 
 41
 Applying the proper standard to these two statements contained in the pre-1987 SPDs, we conclude that they are indeed "capable of reasonably being interpreted" as creating a promise to vest lifetime life insurance benefits in those employees eligible for retirement. Because of the ambiguity of the language, the ultimate determination of whether Empire promised lifetime benefits should be left to a trier of fact, likely assisted by extrinsic evidence to clarify the meaning of this ambiguous language. See Bidlack, 993 F.2d at 609 (allowing parties to present extrinsic evidence to "disambiguate" a collective bargaining agreement's health benefits provisions).[7]
 
 B. Promissory Estoppel
 
 42
 "Principles of estoppel can apply in ERISA cases under extraordinary circumstances." Schonholz, 87 F.3d at 78. A plaintiff must satisfy four elements to succeed on a claim of promissory estoppel: "'(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.'" Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999) (quoting Schonholz, 87 F.3d at 79). Additionally, "an ERISA plaintiff must 'adduce[] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" Aramony, 191 F.3d at 151(quoting Devlin v. Transp. Comms. Int'l Union, 173 F.3d 94, 102 (2d Cir. 1999)). Schonholz provides an example of such extraordinary circumstances, where the employer used promised severance benefits to induce the plaintiff to retire. Schonholz, 87 F.3d at 79-80.
 
 
 43
 Plaintiffs argue that the district court erred by holding that "to satisfy the extraordinary circumstances requirement, a plaintiff must demonstrate a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part." Byrnes, 2000 WL 1538605, at *10. In Shonholz, we stated that "we . . . require, for purposes of ERISA, . . . that [plaintiff] demonstrate a promise that [defendant] reasonably should have expected to induce action or forbearance on her part." Shonholz, 87 F.3d at 79. We did not, however, explicitly define "extraordinary circumstances" or limit it to circumstances of inducement. In Devlin, we noted that "the remarkable consideration in Schonholz was the defendants' use of promised severance benefits as an inducement to persuade Shonholz to retire" and concluded that such circumstances were absent in that case, because the plaintiffs in Devlin could not demonstrate such inducement. Devlin, 173 F.3d at 102. Because we conclude that plaintiffs here have demonstrated sufficient facts supporting intentional inducement to avoid summary judgment, we need not decide whether extraordinary circumstances other than intentional inducement would suffice.
 
 
 44
 To succeed on this claim, then, plaintiffs must, in addition to the four basic elements of promissory estoppel, point to circumstances "beyond the ordinary." Aramony, 191 F.3d at 152. In this vein, plaintiffs contend that the injustice suffered by them due to Empire's reduction in life insurance benefits is such an extraordinary circumstance. But "injustice" is one of the four basic elements of the claim, and therefore does not rise to the level of "extraordinary." Devlin, 173 F.3d at 102 ("Reliance is one of the four basic elements of promissory estoppel, and would not by itself render this case 'extraordinary.'").
 
 
 45
 Plaintiffs also contend that they were induced by Empire to work for over twenty and up to forty years in order to receive (inter alia) a particular level of life insurance coverage, and that Empire acted with the intent to induce by "distributing literature guaranteeing 'lifetime' benefits . . . at 'no cost.'" Appellants' Br. at 29. The district court rejected this contention and noted if courts "were to consider it extraordinary every time an employee chose a job based in part on the quality of an employer's benefits package, the requirement of 'extraordinary circumstances' would lose all meaning." Byrnes, 2000 WL 1538605, at *10.
 
 
 46
 Contrary to the district court's conclusion, we believe that plaintiffs have demonstrated more than mere acceptance of employment at Empire in exchange for these benefits; instead, they have dedicated much of their working lives to Empire. Edwin R. Werner, Empire's former chief executive officer, stated in his deposition that Empire "probably would never be able to compete with some of the profit-making companies out in the world who were competing for the same employees . . . . In order to compensate . . . for the fact that [Empire] might not be able to compete with some organizations that would like the same employees that we would like, we needed to treat our employees well. Our fringe benefit program needed to be respectable . . . ." J.A. at 771. From these and similar statements describing Empire's "promise" of lifetime life insurance benefits for retirees, a trier of fact could reasonably conclude that Empire intentionally promised lifetime life insurance benefits to lure (and retain) employees away from other firms paying higher salaries and then denied those benefits after the employees were of an age where they could neither make up the salary difference or obtain alternative benefits at a reasonable cost. If so found, we believe that such a practice constitutes "extraordinary circumstances" sufficient to support plaintiffs' promissory estoppel claim. Because we find that there are genuine issues of material facts with respect to plaintiffs' promissory estoppel claim, we vacate the grant of summary judgment to the defendants on that claim.
 
 C. Breach of Fiduciary Duty under ERISA
 
 47
 Plaintiffs contend that Empire breached its fiduciary duties, as outlined in ERISA 404(a)(1)(A), (B), and (D), providing that:
 
 
 48
 a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and- . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
 
 
 49
 29 U.S.C. 1104 (a). Plaintiffs' breach of fiduciary duty claims under ERISA 404(a)(1)(A) & (B) are based on Empire's communications concerning their life insurance benefits. Specifically, plaintiffs focus on the retirement letters which indicated that life insurance coverage would be provided for life and on Empire's furnishing the 1987 SPD in response to inquiries concerning the benefit reduction. Plaintiffs' breach of fiduciary duty claim under ERISA 404(a)(1)(D) alleges that Empire, in reducing their life insurance coverage to $ 7500, failed to act in accordance with the life insurance plan documents. The district court rejected all of plaintiffs' fiduciary duty claims, concluding that "Empire acted in accordance with the documents . . . in reducing plaintiffs' life insurance benefit" and "did not describe its benefits to the plaintiffs in a way that was misleading or dishonest; rather it described the plan accurately by setting forth what it intended to continue to offer to retirees while expressly reserving the right to amend or terminate the benefits." Byrnes, 2000 WL 1538605, at *9.
 
 
 50
 Because we disagree with the district court's underlying conclusion--that Empire acted in accordance with the plan documents and that Empire "described the plan accurately . . . while expressly reserving the right to amend"--we must remand these claims in light of our remand of plaintiffs' contractual vesting claim. We provide the district court with the following guidance to be considered on remand.
 
 
 51
 First, we reject both Empire's assertion and the district court's conclusion that Empire was not acting in a fiduciary capacity when it reduced plaintiffs' life insurance benefits. ERISA provides that a "'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." Varity Corp. v. Howe, 516 U.S. 489, 498, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996) (quoting ERISA 3(21)(A), 29 U.S.C. 1002 (21)(A)). Although it is true that "an employer that designs a retirement plan or amends an existing plan's design does not come within ERISA's definition of a fiduciary," Siskind v. Sperry Retirement Program, Unisys, 47 F.3d 498, 505 (2d Cir. 1995), Empire may not have been merely amending an existing retirement plan with respect to the life insurance benefits of these retirees. We have already concluded that, with respect to these retirees, Empire's decision to reduce benefits may have been a breach of a contractual promise to vest such benefits. It therefore follows that Empire may have exercised discretionary authority with respect to the plan, and Empire's unilateral reduction in benefits and its communications about this reduction may have violated the plan documents and, in turn, ERISA 404(a)(1)(D). With respect to the claims based on allegedly misleading communications, we likewise conclude that Empire may have been acting as a fiduciary when it communicated with its employees and retirees concerning the contents of the welfare benefits plan. See Varity Corp., 516 U.S. at 502-03 (finding that where employer communicates with plan beneficiaries about the contents of the plan, an employer is acting in a fiduciary capacity for ERISA purposes where "reasonable employees . . . could have thought that [the employer] was communicating with them both as employer and as plan administrator" (emphasis added)); Flanigan v. Gen. Elec. Co., 242 F.3d 78, 84 (2d Cir. 2001) ("Communicating information about future plan benefits is indeed a fiduciary obligation."); see also Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998) (finding that an employer "may have acted in a fiduciary capacity when it explained its retirement program to the early retirees").
 
 
 52
 Second, regarding fiduciary duty claims under ERISA 404(a)(1)(A) & (B), "[a] fiduciary must discharge his duties 'solely in the interests of the participants and beneficiaries.' He must do this 'for the exclusive purpose' of providing benefits to them. And he must comply 'with the care, skill, prudence, and diligence under the circumstances then prevailing' of the traditional 'prudent man.'" Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982) (Friendly, J.)(quoting ERISA 404 (a)(1)(A) &(B)). Although "a fiduciary is not required to voluntarily disclose changes in a benefit plan before they are adopted," Pocchia v. NYNEX Corp., 81 F.3d 275, 278 (2d Cir. 1996), a fiduciary also has "a duty to deal fairly and honestly with its beneficiaries," Ballone v. Eastman Kodak Co., 109 F.3d 117, 124 (2d Cir. 1997). In repeatedly describing its life insurance benefit as remaining constant for life, Empire may have violated this duty to deal honestly with the plan beneficiaries. Even if, on remand, the trier of fact determines that there was no promise to vest the life insurance benefits, Empire may have still violated any fiduciary duties in its retiree letters and other communications which promised lifetime benefits but failed to note that Empire could reduce or terminate these benefits at any time. "When a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1264 (3d Cir. 1995) (concluding that Unisys had breached its fiduciary duty where it "affirmatively and systematically represented to its employees that once they retired, their medical benefits would continue for life--even though as the district court concluded in rejecting the retirees' contract claim, the plans clearly permitted the company to terminate benefits"); cf. Becher v. Long Island Lighting Co. (In re Long Island Lighting Co.), 129 F.3d 268, 271 (2d Cir. 1997) ("An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan."). On remand, the district court should permit a trier of fact to evaluate Empire's communications with plaintiffs for affirmative misrepresentations regarding plan benefits and for failure to provide completely accurate plan information. A trier of fact could find that there was a fiduciary duty and that Empire breached it.
 
 
 53
 Finally, we disagree with Empire's contention that "there is no private action for breach of fiduciary duty under ERISA when another remedy is available under 29 U.S.C. 1132. Appellee's Br. at 41. Plaintiffs' cause of action for their breach of fiduciary duty claims arises from ERISA 502(a)(3), which allows plan participants, beneficiaries or fiduciaries to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or . . . obtain other appropriate equitable relief." 29 U.S.C. 1132 (a)(3). In Varity Corp., the Supreme Court held that such claims alleging breach of fiduciary duty could be brought by individual plaintiffs because ERISA 502(a)(3) "acts as a safety net, offering appropriate equitable relief for injuries caused by [ERISA] violations that 502 does not elsewhere adequately remedy." Varity Corp., 516 U.S. at 512. The Supreme Court further noted that, given ERISA's requirement that fiduciaries act "solely in the interest of the participants and beneficiaries," 29 U.S.C. 1104 (a)(1), "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." Id. at 513. We note that should plaintiffs' claim under ERISA 502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy. Varity Corp. clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under 502(a)(3). Id. at 515 (noting that ERISA's purposes would be furthered by granting a remedy where no other remedy is available); see also Strom, 202 F.3d at 149 ("[Varity Corp.] evidences a clear intention to avoid construing ERISA in a manner that would leave beneficiaries . . . without any remedy at all.").
 
 
 54
 Varity Corp. further explained, however, that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity Corp., 516 U.S. at 515 (emphasis added). The Supreme Court in Varity Corp. did not eliminate the possibility of a plaintiff successfully asserting a claim under both 502(a)(1)(B), to enforce the terms of a plan, and 502 (a)(3) for breach of fiduciary duty; instead, the Court indicated that equitable relief under 502(a)(3) would "normally" not be appropriate. Ultimately, we believe that the determination of "appropriate equitable relief" rests with the district court should plaintiffs succeed on both claims. This determination must be based on ERISA policy and the "special nature and purpose of employee benefit plans." Id. (internal quotation marks omitted). We therefore hold that Varity Corp. did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate. If the plaintiffs ultimately prevail on this claim upon remand, the district court must then fashion appropriate relief.
 
 D. Penalties
 
 55
 Plaintiffs also press on appeal their claim for penalties under ERISA 502(c)(1)(B), 29 U.S.C. 1132 (c)(1)(B), for failing to provide requested plan information as required by 104, 29 U.S.C. 1024. Section 502(c)(1)(B) provides that "any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant . . . within 30 days after such request may in the court's discretion be personally liable to such participant . . . in the amount of up to $ 100 a day from the date of such failure or refusal." 29 U.S.C. 1132 (c)(1)(B). Plaintiffs contend here, as they did below, that Empire is liable for penalties because it "provided [them] with documentation that . . . Empire knew or should have known did not apply to these individuals and did not govern their benefits." Appellants' Br. at 32. The district court rejected this claim, after determining that Empire furnished copies of the 1987 SPD in a timely fashion. Byrnes, 2000 WL 1538605, at *10. Because we are remanding to the district court, in part based on our determination that the pre-1987 SPDs applied to these plaintiffs, we likewise remand plaintiffs' claim for penalties to the district court. We note, however, that Empire did provide the 1987 SPD within the 30-day time limit and that the ultimate assessment of penalties is a discretionary matter for the district court. In assessing a claim for penalties, courts have considered various factors, including "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." Pagovich v. Moskowitz, 865 F. Supp. 130, 137 (S.D.N.Y. 1994) (citing cases). On remand, the district court should evaluate this claim in light of these factors.
 
 III. CONCLUSION
 
 56
 For the foregoing reasons, we vacate the district court's grant of summary judgment to Empire and remand to allow plaintiffs to present extrinsic evidence, if any, to a trier of fact to illuminate the ambiguities present in the pre-1987 SPDs. We additionally vacate summary judgment with respect to the promissory estoppel, fiduciary duty and penalty claims and remand to the district court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 This action has spurred at least two lawsuits in the federal courts of this Circuit: the instant case and another case, Abbruscato v. Empire Blue Cross, 274 F.3d 90 (2d Cir. 2001), which is also being decided today. These cases were heard in tandem by this Court. We issue two separate opinions in these cases because each set of plaintiffs asserts different arguments on appeal.
 
 
 [2]
 Another document apparently distributed after the quoted document, but also prior to 1987, contained virtually identical language describing the group life insurance benefits. J.A. at 527. The main difference between these two descriptions is that the later document provides that the 10% benefit reduction begins at age 65, whether the employee is an active employee or a retiree. Id.
 
 
 [3]
 The parties do not dispute that life insurance benefits are such "welfare benefits" under ERISA. See 29 U.S.C. 1002 (1).
 
 
 [4]
 We note that our decision in Reichelt v. Emhart Corp. states that "ERISA preempts civil actions against employers for [welfare benefits] predicated on common-law contract principles." Reichelt, 921 F.2d 425, 431-32 (2d Cir. 1990). In Reichelt, we rejected the plaintiff's contention that the employer's severance plan created a "unilateral offer that employees accept by continuing to work for the employer" because "accepting plaintiffs' argument would nullify Congress's determination in structuring ERISA that welfare benefit plans . . . should be exempted from the stringent vesting requirements applicable to pension benefit plans." Id. at 432.
 Here, plaintiffs do not rely on a common law contract claim to the exclusion of a claim under ERISA; instead, plaintiffs' claim under ERISA 502(a)(1)(B), which is essentially "the assertion of a contractual right under a benefit plan." Strom, 202 F.3d at 142. As we recently held in Multifoods, "if an employer promises vested benefits, that promise will be enforced." Multifoods, 116 F.3d at 980 (citing 29 U.S.C. 1132 (a)(1)(B)); see also Schonholz, 87 F.3d at 78-79 (applying the common law of contracts in assessing a promissory estoppel claim under ERISA). Contract law therefore guides our determination of whether, under ERISA, plaintiffs are entitled to "enforce [their] rights under the terms of the plan." 29 U.S.C. 1132 (a)(1)(B).
 
 
 [5]
 New York law apparently follows the minority view that a unilateral contract offer is revocable up until performance is complete. See Petterson v. Pattberg, 161 N.E. 428 (N.Y. 1928). Empire's argument parallels this view: Because these employees retired after 1987, when the SPD containing the reservation of rights clause issued, they are not entitled to the disputed life insurance benefits.
 However, in ERISA cases, state law does not control. Instead, general common law principles apply. In Schonholz, for example, we reversed where the district court relied on New York's formulation of promissory estoppel. Schonholz, 87 F.3d at 78-79 (relying on Restatement (Second) of Contracts 90(1) for the elements of promissory estoppel and noting that "ERISA is a federal law regime . . . designed to eliminate the threat of conflicting state and local regulation").
 
 
 [6]
 It is for this reason that Empire's reliance upon the VSOP or VIP documents' reservation of rights clauses likewise fails (assuming that these clauses in fact successfully reserved Empire's right to amend these plans).
 
 
 [7]
 In this vein, plaintiffs have presented exit letters given to retiring employees which describe the retirees' life insurance benefits as a lifetime benefit: "The company provided life insurance that you have under our group program . . . will also be continued. . . . This amount will be reduced by 10% on your retirement date . . . and will continue to be reduced by 10% of the original face value during the next four anniversaries of your retirement . . . until it reaches [a level equal to your annual salary] where it will remain constant for life." J.A. at 611 (emphasis added). The letters included no indication that this coverage would be reduced or terminated. Such evidence arguably reinforces plaintiffs' interpretation of the relevant plan documents.