**Gary F. BROCKETT, Plaintiff–Appellant,**

Terry L. Crawford, Plaintiff,

v.

Earle C. REED, Tim Reed, Utica Boilers, Inc., Enviromaster International Corporation, Utica Boilers, Inc., Profit Sharing Plan, Defendants–Appellees.

No. 02–9370.

United States Court of Appeals, Second Circuit.

Oct. 15, 2003.

Thomas C. Buckel, Jr. (James S. Skloda), Hancock & Estabrook, LLP, Syracuse, NY, for Plaintiff–Appellant, Gary F. Brockett, of counsel.

Gary F. Kotaska (Paul K. Stecker), Phillips, Lytle, Hitchcock, Blaine & Huber, LLP, Buffalo, NY, for Defendant–Appellees, Earle C. Reed, Tim Reed, Utica Boilers, Inc., Enviromaster International Corporation, and Utica Boilers, Inc., Profit Sharing Plan, of counsel.

Present: MESKILL, KATZMANN, and RAGGI, Circuit Judges.

**Summary Order**

**ORDERED, ADJUDGED AND DE-CREED** that the judgment of the District Court is **AFFIRMED IN PART, REVERSED IN PART and REMANDED.**

The plaintiff, Gary F. Brockett, was employed as President of the defendant, Enviromaster International Corporation ("EIC"), from late 1993 until late 1998. EIC was during that period controlled by the defendant, Utica Boilers, Inc. ("Utica"). Utica permitted EIC employees to participate in its profit sharing plan ("the Plan"), a group employee benefits plan organized pursuant to the Employee Re-

tirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2000 & Supp. 2002) ("ERISA"). A version of the Plan enacted in 1994 provided that Utica would make yearly contributions to Employee accounts based on the classification of each employee. An "Executive Management Employee" was to receive the lesser of $30,000 or 25% of the employee's annual income, a "Senior Management Employee" to receive 15% of his or her annual compensation, and "All Other Eligible Employees" to receive 7% of their annual income. Utica classified Brockett in the latter category, and, when Brockett subsequently brought suit in the United States District Court for the Northern District of New York (Hurd, *J.*), contending that he was entitled to the benefits of an Executive Management Employee, the District Court agreed that Utica's decision was not arbitrary or capricious. Brockett now appeals that determination.

Additionally, in his Complaint below, Brockett alleged that his termination in 1998 was in retaliation for an inquiry made on his behalf about his proper classification, or, alternately, that the termination was made in order to avoid paying Brockett the higher benefits he sought. Either allegation, if true, would establish a violation of ERISA's anti-discrimination provision, 29 U.S.C. § 1140. *See Montesano v. Xerox Corp.*, 256 F.3d 86, 88–89 (2d Cir. 2001); *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988). The District Court, however, granted summary judgment in favor of the Defendants on these claims, and Brockett now appeals that decision as well.

■ ERISA plans must be construed according to federal common law. *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir.2002); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 84 n. 5 (2d Cir.2001). The parties agree that the Plan gives the plan administrator discretionary authority to determine eligibility. As a result, we may overturn the administrator's decision only if it is "arbitrary and capricious," that is, "if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir.2002) (internal quotation omitted). Unambiguous language, however, "leaves no room for the exercise of discretion," and we need not defer to an interpretation that is contrary to the plain language of a plan. *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir.1994).[1]

The Plan at issue does not expressly define the term "Executive Management Employee." Plaintiff submits that the term unambiguously applies to someone like himself who served as corporate president of EIC. The District Court saw some merit in this argument, noting that "Brockett," as the President of [EIC], would constitute "an 'Executive Management Employee' under any generally-accepted definition of that term." The District Court, nevertheless, found the term ambiguous, noting that there are some classifications of employees "at the fringes" for whom it is unclear. If the Plan applied only to EIC employees, we would disagree. But because EIC is controlled by Utica, there is an ambiguity as to whether EIC officers should be treated similarly to their counterparts at Utica or as subordinate to them. Because of this ambiguity, we apply the "arbitrary and capricious" standard of review to the administrator's eligibility determination. We

---

1. Of course, a plan administrator almost certainly abuses its discretion when it renders a decision contrary to the plain language of the plan, so that the fact that our review in such cases is de novo makes little practical difference.

cannot determine on the present record, however, whether the administrator abused its discretion in refusing to classify Brockett as an "Executive Management Employee."

The Defendants argue that we should read the term "Executive Management Employee" in light of the three classification systems in place prior to the adoption of the 1994 Plan. At a 1993 meeting of the Utica Board of Directors, the Board designated three new categories for employee compensation, "A," "B," and "C." They directed that "[e]ach year the Board of [D]irectors will ... from time to time decide, in its sole discretion, which employees shall be included in which employee class." *Id.* The Board then identified two members of class A, neither of them Brockett. One of these two, R.H. Hilton, was then acting President of EIC. The Board also named two members of class B, and stated that class C "shall consist of all other eligible employees." The record, however, does not reveal whether the intent of the settlors was to allocate membership within each category by title, by individual, by salary, or by some other method not now apparent. We are therefore unable to appraise the force of this argument.

The Defendants also argue that Brockett was not an "Executive Management Employee" because the Plan language was based on the employee's status with Utica, not EIC. Thus, the Defendants reason, Brockett was just an ordinary employee of Utica, not its president. We note that the Plan itself states that all "Employees shall be treated as employed by a single Employer." Whether this language suggests that employees with identical titles at two different arms of the corporation should be treated similarly under the Plan depends on other evidence not in the record before us. For example, if the officers of Utica are in other ways compensated more handsomely than their counterparts at EIC, or if EIC were shown to be merely one star in a constellation of Utica holdings, the Plan could more reasonably be interpreted in the manner that Defendants urge.

Accordingly, we conclude that we are unable to determine on the present record whether the Defendants acted arbitrarily or capriciously. We therefore vacate the judgment on this ground, and remand to the District Court for its renewed consideration following further factual development.

■ We agree, however, that the District Court properly granted summary judgment on Brockett's discriminatory and retaliatory discharge claims. Where an employer articulates a "legitimate, nondiscriminatory [and nonretaliatory] reason" for its termination of an employee, *Dister,* 859 F.2d at 1111 (internal quotation marks omitted), the plaintiff, to survive summary judgment on such claims, must come forward with evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [either] discrimination" or retaliation," *id.* Here, the Defendants have adduced evidence that Brockett's unsatisfactory job performance was the reason for his termination. Brockett, however, has failed to carry his burden of showing that a discriminatory or retaliatory reason more likely motivated the Defendants' termination decision or that the Defendants' explanation is otherwise unworthy of credence. As a result, we must affirm the District Court's decision to grant summary judgment on these claims.

Therefore, for the reasons stated above, the judgment of the District Court is hereby Vacated in Part and Affirmed in Part, and Remanded for further proceedings

consistent with this Opinion. This panel retains jurisdiction.