Nicholas BOUBOULIS, Eileen Bouboulis, Joseph Bracken, Bertha Bracken, Arnold Cherry, Joseph Continanzi, Jeannette Continanzi, Anthony Corona, Joann Corona, Vincent Curulli, Minnie Curulli, Dennis Gallen, Franca Gallen, Lawrence Henry, Dorothy Henry, John Higgins, Mary Higgins, William Keating, Mary Keating, Peter Lynch, Iris Lynch, John McGrath, Elizabeth McGrath, John Meehan, Sandra Meehan, John Mirrione, Marianne Mirrione, John Moscola, Gail Moscola, Francis O'Brien, Nicki O'Brien, Gustave Pelligrino, Barbara Pelligrino, Angelo Perilli, Beverly Perilli, Pedro Quinones, Mildred Quinones, Gil Rodriguez, Luz Maria Rodriguez, Darnell Rogers, Delphine Rogers, George Small, Anna Small, Charles Tompkinson, and Margaret Tompkinson, Plaintiffs–Appellants,

v.

TRANSPORT WORKERS UNION OF AMERICA, Transport Workers Union of Greater New York, Local 100, and Transport Workers Union of Greater New York Local 100 Staff Benefit Plan, Defendants–Appellees.

Docket No. 04–4241–CV(L), 04–4244–CV(CON).

United States Court of Appeals, Second Circuit.

Argued: Nov. 29, 2005.

Decided: March 14, 2006.

George Schell, Schell & Schell, P.C., Fairport, NY, for Plaintiffs–Appellants.

Daniel R. Bright, Kennedy, Schwartz & Cure, P.C., New York, NY, for Defendant–Appellee Transport Workers Union of Greater New York, Local 100.

Peter D. Dechiara, Cohen, Weiss and Simon LLP, New York, NY, for Defendants–Appellees Transport Workers Union of America and Transport Workers Union of Greater New York Local 100 Staff Benefit Plan.

Before: McLAUGHLIN, SACK, Circuit Judges; KOELTL, District Judge.*

KOELTL, District Judge.

In April 2002, the Transport Workers Union of Greater New York, Local 100 ("Local 100"), a local union affiliated with the Transport Workers Union of America ("TWU"), modified its employee benefit plan to stop providing health insurance benefits to Local 100 retirees if they received health insurance benefits elsewhere. In response, the plaintiffs, who are twenty-three retired staff employees of Local 100 (the "Retirees") and the wives of twenty-two of them (the "Wives"), sued Local 100, TWU, and the Transport Workers Union of Greater New York Local 100 Staff Benefit Plan (the "Plan") in the United States District Court for the Southern District of New York. The plaintiffs alleged claims based on denial of benefits and breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1000–1461, as well as promissory and equitable estoppel claims.

The plaintiffs now appeal from two orders of the district court (Shira A. Scheindlin, J.), which together dismissed all the claims. The district court's July 7, 2004 Opinion and Order partially granted the defendants' motion for summary judgment and dismissed the ERISA and equitable estoppel claims, but retained the promissory estoppel claims of seven of the Retirees and their respective Wives alleged against Local 100. *Bouboulis v. Transportation Workers Union of Greater New York, Local 100*, 2004 WL 1555129 (S.D.N.Y. July 9, 2004). In an Order dated July 14, 2004, the district court on its own initiative dismissed the remaining promissory estoppel claims for lack of subject matter jurisdiction. On appeal, the plaintiffs contend that granting summary judgment was improper because there was an ambiguity in the Plan's Summary Plan Description ("SPD") when it is read in conjunction with an April 17, 1989 letter from the former Local 100 President Sonny Hall (the "Hall Letter"), as to whether there was a contractually vested promise of lifetime health insurance benefits. The plaintiffs also argue on appeal that Local 100 and TWU were plan fiduciaries under ERISA who beached their fiduciary duties through misrepresentations and inaction.

* The Hon. John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

The plaintiffs have not appealed the dismissal of the promissory and equitable estoppel claims.

We conclude that summary judgment was inappropriate only with regard to the breach of fiduciary duty claim against Local 100 because Local 100 was a Plan fiduciary. We therefore vacate the district court's Order to the extent it dismissed that claim and remand the case to the district court.

## BACKGROUND

Defendant TWU is a national union that represents transportation workers. Defendant Local 100 is a local union that represents employees of the New York City Transit Authority ("Transit Authority"), and is affiliated with TWU. Although Local 100 is governed by TWU's constitution, it is an autonomous union with its own bylaws, elected officers, employees, and revenue stream from membership dues. The defendant Plan is an employee benefits plan sponsored by TWU that provides health and life insurance coverage, in which Local 100 participates. Both Local 100 and TWU are listed as Plan Administrators in the Plan's SPD.

The plaintiff Retirees are twenty-three retired former staff employees of Local 100 who were enrolled in the Plan after leaving jobs at the Transit Authority. Many of the Retirees claim that they were told or promised by Local 100 officers or staff either before they were hired, upon being hired, when considering retirement, or at various other times during their employment, that they would have lifetime health insurance coverage under the Plan. All Retirees believed that they were guaranteed lifetime health coverage from the Plan, which was superior to the health benefits provided to Retirees as active and retired employees of the Transit Authority.

The terms of the Plan, as they existed from 1982 through 2000, are set out in two documents. The complete terms and conditions of the Plan are detailed in a Group Insurance Certificate. The terms of the Plan are also summarized in a 1982 summary plan description (the "SPD") that was distributed to Plan participants. A revised SPD took effect on January 1, 2001, but plaintiffs contend that their benefits vested under the original SPD, and that to the extent the revised SPD states that their benefits are not vested, it does not apply to them. The 1982 SPD contains no express reservation of the right to amend or terminate coverage under the Plan.

In the Hall Letter, then Local 100 president Sonny Hall announced a modification to the terms of the Plan. Under the SPD, when a participant died, his or her spouse's insurance coverage under the Plan continued for only one year after the participant's death. The Hall Letter announced that effective January 1, 1989, a surviving spouse of a participant who died would continue to be covered for the remainder of the spouse's life. In December 1999, Local 100 stopped providing free health insurance to its active employees, although it continued to provide coverage to its retirees. Also in 1999, various officers of Local 100 allegedly promised orally and in writing that retirees of Local 100 would continue to receive Plan coverage.

New leaders of Local 100 were elected in December 2000, and took office in January 2001. On April 16, 2002, Local 100 decided to terminate health insurance coverage for retirees who were entitled to receive health insurance from other employers. This decision became effective on or shortly after September 1, 2002. As active or retired employees of the Transit Authority, the plaintiff Retirees were enti-

tled to health insurance at no cost through the Transit Authority, and as a result, they ceased to be covered under the Plan on September 1, 2002.

The plaintiff Retirees and their Wives filed a complaint in the United States District Court for the Southern District of New York, which stated three Counts. Count One alleged an ERISA denial of benefits claim against all defendants for termination of coverage. Count Two alleged an ERISA breach of fiduciary duty claim against Local 100 and TWU for misrepresentations regarding the coverage. Count Three alleged promissory and equitable estoppel claims against Local 100 and TWU.[1] The district court dismissed the ERISA and equitable estoppel claims in its July 7, 2004 Opinion and Order, and dismissed the remaining promissory estoppel claims for lack of subject matter jurisdiction in its July 14, 2004 Order. This appeal followed.

## DISCUSSION

### I. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *State Street Bank and Trust Co. v. Salovaara*, 326 F.3d 130, 135 (2d Cir.2003). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law governing the case will identify those facts that are material, and "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Appellate Jurisdiction

■ As an initial matter, the defendants challenge this Court's appellate jurisdiction. The defendants argue that appellate jurisdiction is lacking because the plaintiffs appealed the district court's July 7, 2004 Opinion and Order, which did not dismiss all the claims in the case. While the plaintiffs submitted Notices of Interlocutory Appeal on August 2, 2004, appealing both the July 7 and July 14, 2004 Orders, the defendants argue that the appeal of the July 14, 2004 Order was abandoned, and that the present appeal is only from the July 7 ruling, which they argue is not an appealable final order. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 781 (2d Cir.1999) ("A grant of partial summary judgment that resolves only some of the issues raised by a complaint is not an appealable final judgment."); *Chapple v. Levinsky*, 961 F.2d 372, 374 (2d Cir.1992) (per curiam) (dismissing for lack of appellate jurisdiction an appeal of an order that adjudicated fewer than all the claims in the action, where the district court did not direct entry of a final judgment of dismissal pursuant to Federal Rule of Civil Procedure 54(b)).

■ The process of appeal was complicated by the fact that the Clerk of the district court never entered a final judgment from which the plaintiffs could appeal. The district court's July 14, 2004 Order disposed of all the remaining claims in the case, and concluded: "[P]laintiffs'

---

1. The Plan was a defendant only in the Count One denial of benefits claim. Although Count Three (unlike Counts One and Two) does not specify the defendants, the district court interpreted the claim as asserted only against Local 100. *Bouboulis*, 2004 WL 1555129, at *7.

Complaint is dismissed in its entirety for lack of subject matter jurisdiction. The Clerk of the Court is directed to close this case." At that point, the Clerk should have promptly entered judgment dismissing the action. *See* Fed R. Civ. P. 58(a)(2)(A)(iii). On "appeal from a final judgment concluding the action, earlier summary dispositions merge in the judgment and are reviewable." *West*, 167 F.3d at 781 (internal citation and quotation marks omitted).

Despite the failure to enter judgment, it was plain when the plaintiffs filed Notices of Interlocutory Appeal on August 2, 2004 from both the July 7, 2004 Order and the July 14, 2004 Order that the entire action had been dismissed. The failure of the Clerk to enter a separate judgment does not require this Court to dismiss the appeal. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) ("If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal.").

■ In light of the fact that the district court did, indeed, dismiss the plaintiffs' action in its entirety, the defendants' jurisdictional argument fails. Even if the plaintiffs appealed the district court's dismissal prematurely, "a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellees suffers no prejudice." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054–55 (2d Cir.1993) (citations and internal quotation marks omitted). The defendants do not allege that they have been prejudiced. Appellate jurisdiction is therefore proper.

## III. ERISA Denial of Benefits Claim

■ We first address the ERISA denial of benefits claim, which was alleged against Local 100, TWU, and the Plan. The district court examined the relevant Plan document—the SPD—and found that there was no affirmative written language that could reasonably be interpreted as a promise to vest contractually the plaintiffs' lifetime health benefits. *Bouboulis*, 2004 WL 1555129, at *4. The district court ruled that the Hall Letter was not sufficiently formal to be considered along with the SPD as a Plan document, and that even if the Hall Letter were considered, there still was no language that affirmatively operates to create the contractually vested promise. *Id.* We have frequently addressed the question of when an alleged promise of lifetime health or welfare benefits is contractually vested so that the subsequent termination of the benefits gives rise to a denial of benefits claim under ERISA. *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76 (2d Cir.2001); *Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130 (2d Cir.1999); *American Federation of Grain Millers, AFL–CIO v. Int'l Multifoods Corp.*, 116 F.3d 976 (2d Cir.1997); *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir.1996). The standard that we have adopted is whether the plan documents contain " 'specific written language that is reasonably susceptible to interpretation as a promise' " to vest the benefits. *Devlin*, 274 F.3d at 84 (quoting *Joyce*, 171 F.3d at 134).

■ As an initial matter, we address the defendants' argument that the SPD must be interpreted in conjunction with the Group Insurance Certificate, which explicitly reserved the right to amend the Plan. This argument is unavailing. As we have previously noted:

It is of no effect to publish and distribute a [SPD] designed to simplify and

explain a voluminous and complicated document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet. We conclude that ... where ... the terms of a plan and those of a [SPD] conflict, it is the [SPD] that controls. Therefore, if the SPD promised vested medical benefits to the retirees, the SPD would control.

*Multifoods,* 116 F.3d at 983 (internal citation omitted). Thus, much like the district court did in this case, we look to the SPD and any alleged amendments to the SPD— and not to the Certificate—as the relevant Plan documents.

The SPD itself is silent regarding vesting of lifetime benefits. The SPD lists two circumstances under which benefits may be terminated: ceasing employment and death. The plaintiffs argue that because they are already retired, the only applicable termination event is death, and that it is reasonable to infer that lifetime benefits are being promised. The plaintiffs try to bolster this conclusion by arguing that 29 U.S.C. § 1022(b) requires the SPD to list the circumstances which may result in "loss of benefits." [2] This analysis is incorrect for reasons largely explained in the district court opinion, namely that the "absence of such language alone cannot create a promise to vest." *Bouboulis,* 2004 WL 1555129, at *4. Moreover, the SPD does not contain any affirmative language resembling the "lifetime" language found to create an ambiguity in *Devlin,* 274 F.3d at 85 (SPD stated that life insurance benefits will remain at the annual salary level "for the remainder of their lives"). Thus, we conclude that the SPD by itself does not vest lifetime health benefits.

■ The next issue is whether the Hall Letter modifies the SPD and provides "specific written language that is reasonably susceptible to interpretation as a promise." *Devlin,* 274 F.3d at 84. The Hall Letter announced "an increase in Plan Benefits for the surviving spouse and dependents of a deceased employee or retiree." The letter provided:

> Prior to January 1, 1989 TWU Local 100 Staff Benefit Plan provided that upon the death of a participant (whether active or retired), insurance coverage would be continued for his or her spouse and dependent children for a period of one (1) year following the date of the participant's death.

> For deaths occurring on or after January 1, 1989, the Plan provides that, upon the death of a participant (whether active or retired), insurance coverage will continue to the participant's spouse for the remainder of his/her lifetime.

The district court found that the Hall Letter did not rise to the level of formality of the plan documents, and thus did not create a legally cognizable promise to vest benefits. *Bouboulis,* 2004 WL 1555129, at *4 (citing *Schonholz,* 87 F.3d at 78). The plaintiffs argue that the Hall Letter, which was distributed to all Plan members on official stationery, served as a formal notice of material modification as required by 29 U.S.C. §§ 1022(a) and 1024(b).

Section 1022(a) states that a summary of any material change in benefits/eligibility must be "written in a manner calculated to be understood by the average plan participant," and shall be furnished in accordance with § 1024(b)(1). Section 1024(b)(1), in turn, provides that summaries of modifications must be given to each participant: 1)

---

**2.** Section 1022(b) provides that the summary plan description shall contain, among other things, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).

ninety days after becoming a participant, 2) every fifth year, and 3) if there is a modification that does not materially reduce benefits, "a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. § 1024(b)(1). In this case, the Hall Letter states that the change in the Plan was effective January 1, 1989. The Plan was changed with an "increase in Plan benefits for the surviving spouse and dependents of the deceased employee or retiree." Thus, a notice of modification was required to be provided to each participant and beneficiary. The defendants do not appear to dispute that the Hall Letter appears to be the only notification that could meet the requirements of 29 U.S.C. §§ 1022(a) and 1024(b).

While we and other courts have concluded that certain communications to plan participants did not effectively modify ERISA plans, the communications in those cases were much less formal than the Hall Letter, which was on official stationery and sent to all Plan participants. *See Moore v. Metropolitan Life Insurance Co.*, 856 F.2d 488, 490, 492 (2d Cir.1988) (filmstrips and presentations not formal enough to override or amend the SPD); *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 857 n. 2 (4th Cir.1994) (finding that the "Schedule II" forms distributed to retiring employees describing level of health benefits to be received after retirement was an informal communication because it did not describe the Plan's terms in a way to qualify as an ERISA plan document under § 1022, and could not override or amend the SPD); *Alday v. Container Corp. of America*, 906 F.2d 660, 665–66 (11th Cir.1990) (individual "Summary of Personal Benefits" booklets and letters sent to retiring employees could not modi-

fy the terms of a plan because they did not qualify as an plan documents under ERISA); *Fitch v. Chase Manhattan Bank, N.A.*, 64 F.Supp.2d 212, 225 (W.D.N.Y.1999) (individualized letters accompanying SPDs are not themselves part of the SPD and therefore do not create binding obligations under ERISA). Unlike those cases, the communication here could potentially be construed as a statutorily required notice of a material modification, and thus sufficiently formal to be considered.

In any event, we need not decide whether the Hall Letter was a statutorily required notice or was otherwise sufficiently formal, because even if the Hall Letter binds the defendants, it contains no language that affirmatively operates to create a promise to vest benefits for the Retirees. The Hall Letter promises that upon the death of a Plan participant, "insurance coverage will continue to the participant's spouse for the remainder of his/her lifetime." This appears to be a promise of lifetime benefits to the surviving spouses of deceased participants. The plaintiffs argue that such a promise makes no sense unless the Plan participants also have lifetime benefits, and that the Hall Letter therefore creates an ambiguity as to whether the Retirees' health benefits have vested. This ambiguity, they contend, opens the door to the consideration of extrinsic evidence and renders summary judgment improper.

However, the Hall Letter promises lifetime health benefits to spouses "upon the death of a plan participant." The best interpretation of this language is that the Hall Letter promises benefits to spouses of participants who are participants at the time of their death. If the retiree is no longer a participant at the time of death, the spouse does not receive any further benefits. Thus, the promise to the sur-

viving spouses does not require lifetime benefits for the Retirees, and does not constitute affirmative language that could reasonably be interpreted as creating a promise to vest the Retirees' benefits. The Hall Letter does not otherwise promise lifetime benefits to Plan participants. As the district court found, the Hall Letter "concerns only the benefits of spouses of deceased participants, *not* the benefits of the participants themselves." *Bouboulis*, 2004 WL 1555129, at *4 (emphasis in original). Thus, the district court correctly granted summary judgment dismissing Count One of the Complaint.

## IV. Breach of Fiduciary Duty Claim Against Local 100

■ The district court dismissed the breach of fiduciary duty claim against Local 100 because it determined that "Local 100's responsibilities under the Plan were limited to purely ministerial functions," and thus Local 100 was not a plan fiduciary. *Bouboulis*, 2004 WL 1555129, at *6. The plaintiffs argue that Local 100 was a plan fiduciary because: 1) it was listed as a Plan Administrator in the SPD, and 2) it acted in a fiduciary capacity when explaining plan benefits to employees.[3] The determination of whether Local 100 was a plan fiduciary based on undisputed facts is reviewed *de novo. LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir.1997).

### A.

ERISA provides that a " 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the

plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)). Section 1002(21)(A) provides:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

Thus, § 1002(21)(A) creates a bifurcated test: "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir.1992); *see also Flanigan v. General Electric Co.*, 242 F.3d 78, 87 (2d Cir.2001) ("Under this definition, a person ... has [fiduciary] status only 'to the extent' that he has or exercises the described authority or responsibility." (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir.1987) (alternations in original))); *Blatt v. Marshall & Lassman,*

---

**3.** Plaintiffs also argue that Local 100 exercised discretionary authority relative to Plan management by reducing benefits in violation of Plan terms. Because we have already found above that there was no merit in the denial of benefits claim, there is no need to address this argument.

812 F.2d 810, 813 (2d Cir.1987) ("The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control.")

It is undisputed that Local 100 was listed as a "Plan Administrator" in the SPD. The SPD states that "The Plan Administrators are The Transport Workers Union of America and Transport Workers Union of Greater New York Local 100." Other parts of the SPD make clear that the Plan Administrators have discretionary authority or responsibility in the administration of the Plan. For example, the SPD provides:

• "If, the insurance company involved decides against you, and you wish to continue the appeal, do so by writing to the Administrators. The Administrators will review the entire record of your claim and what happened with it. You will be advised, in writing, of their final decision."

• "You have the right to have the Administrators review and reconsider your claim. Under ERISA there are steps you can take to enforce your above rights. For instance, if you request materials from the Administrators and do not receive them within 30 days, you may file suit in federal court."

Thus, the SPD provides that regardless of whether Local 100 ever exercised any discretionary authority as a Plan Administrator, Local 100 possessed discretionary authority and responsibility in the administration of the Plan, and was thus a fiduciary by virtue of being a Plan Administrator. Relevant Department of Labor regulations have addressed this issue:

Q: Does a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan?

A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act. For example, a plan administrator or a trustee of a plan must, be [sic] the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries.

29 C.F.R. § 2509.75–8. Local 100 should thus be considered a fiduciary under subsection three of ERISA § 3(21)(A), even if, as the district court found, there is no evidence that Local 100 actually exercised this authority in a manner that would qualify under subsection one.

The district court did not adopt this bifurcated analysis, but rather collapsed the test into whether Local 100 in fact performed any discretionary functions:

That is, despite being designated a "Plan Administrator" in the SPD, Local 100 is only a fiduciary if it performs the discretionary functions of a fiduciary. An entity that performs only "ministerial" functions such as "the application of rules determining eligibility for participation, calculation of services and benefits, and collection of contributions," is not a fiduciary, regardless of title.

*Bouboulis*, 2004 WL 1555129, at *6. The district court relied on our opinion in *Blatt*, which stated "whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." *Blatt*, 812 F.2d at 812. However, *Blatt* recognized that "Congress intended the term [fiduciary] to be broadly construed," and thus the determination of who exercised discretionary authority under subsection one of ERISA § 3(21)(A) was not limited by formal title. *Id. Blatt* used its functional analysis to find that persons

who actually exercised control over the disposition of Plan assets were fiduciaries under ERISA § 3(21)(A)(i). *Blatt* did not hold that persons or entities that have discretionary authority or responsibility in the administration of a plan, but who do not exercise it, are excluded from the definition of fiduciaries under ERISA § 3(21)(A)(iii). *Blatt* also does not suggest that formal titles are irrelevant for determining who possessed discretionary authority under subsection three of 29 U.S.C. § 1002(21)(A). The formal title of "Plan Administrator" has special significance under ERISA. *See* 29 C.F.R. § 2509.75–8; *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 141–42 (2d Cir.1997) (relying on 29 C.F.R. § 2509.75–8 to find a plan administrator to be a fiduciary for purposes of determining standing).

Other courts have found that the title "Plan Administrator" does not automatically make a third-party administrator a fiduciary if it has no discretionary authority. *See, e.g., Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir.1989) ("[A] plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary."). But in this case, Local 100's title of Plan Administrator must be considered in conjunction with the SPD, which does provide discretionary authority to Administrators. Thus, the district court erred in finding that Local 100 was not a fiduciary.

### B.

■ The plaintiffs' second argument is that Local 100 acted as a fiduciary when explaining plan benefits to employees. The SPD gave Local 100, as Plan Administrator, the authority to speak to Plan participants concerning their coverage or present state of their claims. Moreover,

"ERISA itself specifically requires administrators to give beneficiaries certain information about the plan." *Varity*, 516 U.S. at 502, 116 S.Ct. 1065 (citing ERISA §§ 102, 104(b)(1), 105(a)).

The Supreme Court has held that when an employer communicates with plan participants about the contents of the plan, and when "reasonable employees ... could have thought that [the employer] was communicating with them *both* in its capacity as employer *and* in its capacity as plan administrator," the employer can be found to be acting as a fiduciary under ERISA. *Id.* at 503, 116 S.Ct. 1065 (emphasis in original).

Local 100 argues that the evidence establishes that it acted only in its capacity as an employer when speaking to the Retirees about their health benefits. The district court did not address this argument directly, but it did conclude in the context of the promissory estoppel claim that there were triable issues of fact as to whether a number of the Retirees had received promises of lifetime health benefits when deciding whether to accept employment at Local 100 or to retire early. *Bouboulis*, 2004 WL 1555129, at *8–9. Assurances of plan benefits made to employees considering retirement could reasonably be thought to be communicated in the capacity of both an employer and plan administrator. *See Varity*, 516 U.S. at 504–05, 116 S.Ct. 1065 (finding that employer assurances of plan benefits to employees made to induce them to transfer to another subsidiary amounted to an act of plan administration).

Because Local 100 had the authority under the SPD as a plan administrator to speak to the employees about their coverage, and because reasonable employees could have believed that Local 100 communicated with them as both an employer and as a plan administrator about their cover-

age, this is an additional ground to find that Local 100 owed the plaintiffs a fiduciary duty.

## C.

■ Because Local 100 is a fiduciary, if the plaintiffs can establish that Local 100 made intentional misrepresentations about the existence of lifetime health benefits, then Local 100 could be found to have breached its fiduciary duties to the plaintiffs. *See Varity,* 516 U.S. at 506–07, 116 S.Ct. 1065. The district court did not examine this claim any further because it found that Local 100 was not acting as a fiduciary, although the district court did find in the context of its promissory estoppel analysis that there were triable issues of fact as to whether misrepresentations were made to some of the plaintiffs. *Bouboulis,* 2004 WL 1555129, at *7–8.

Local 100 also argues on appeal that even if it is found to be a plan fiduciary, the breach of fiduciary duty claim would still fail as a matter of law because: 1) no material misrepresentations were made because the alleged promises were merely predictions, and 2) there was no reasonable or detrimental reliance by plaintiffs. These arguments were addressed by the district court in the context of the promissory estoppel claim, but not in the context of the breach of fiduciary duty claim. *Id.* "It is our settled practice to allow the district court to address arguments in the first instance." *See Farricielli v. Holbrook,* 215 F.3d 241, 246 (2d Cir.2000) (per curiam).

Thus, we vacate the district court's dismissal of the breach of fiduciary duty claim against Local 100, and remand to allow the

district court to consider the remaining issues on this claim in the first instance.

## V. Breach of Fiduciary Duty Claim Against TWU

■ The final issue on appeal is the breach of fiduciary duty claim against TWU. The parties do not dispute that TWU is a Plan fiduciary. The plaintiffs instead argue for the first time on appeal that TWU's failure to inform the plaintiffs of Local 100's decision to reduce benefits amounts to a breach of fiduciary duty. At the district court level, the plaintiffs argued that TWU's failure to inform Local 100 of the promise of lifetime health coverage, which had allegedly been made in the past to the Retirees, was a breach of fiduciary duty. The district court noted that "no court has recognized an affirmative duty to communicate with third parties" who are not Plan participants, and found that TWU's failure to inform Local 100 was not a breach of fiduciary duty. *Bouboulis,* 2004 WL 1555129, at *5. In their brief on appeal, in discussing TWU's failure to inform Local 100, the plaintiffs do not contest or otherwise address this ruling.[4] Instead, the plaintiffs now argue that TWU's failure to inform the Plan participants—rather than a third party—constituted the breach of fiduciary duty.

This is a new claim not raised in the plaintiffs' complaint. Count Two alleges that TWU and Local 100 "affirmatively misrepresented" to the employees that "the Plan coverage for retirees would last for their entire lifetime and that of their spouse." Complaint ¶ 141. The plaintiffs admitted after discovery that there was no evidence of any affirmative misrepresentations by TWU or the Plan. Robert P.

---

4. The district court also ruled that the alleged affirmative misrepresentations made by Dennis Calhoun and William James, officers of Local 100 who also had "limited responsibili-

ties" as officers of TWU, could not be imputed to TWU. *Bouboulis,* 2004 WL 1555129, at *6. The plaintiffs do not address this ruling.

O'Brien Letter dated Dec. 1, 2003, at 3. We will not consider the plaintiffs' new claim based on TWU's alleged failure to inform the Plan participants when it is absent from the complaint and raised for the first time on appeal. *See Madrigal Audio Laboratories, Inc. v. Cello, Ltd.*, 799 F.2d 814, 820 (2d Cir.1986) (collecting cases, and noting that a party "may not raise claims on appeal which it failed to raise before the trial court" unless "manifest injustice" will result).

Thus, we affirm the district court's ruling dismissing the breach of fiduciary claim against TWU.

## CONCLUSION

We have carefully considered all of the appellants' arguments on appeal. For the reasons discussed above, the judgment of the district court is affirmed, with one exception. We vacate that portion of the district court's Order that dismissed the plaintiffs' claim for breach of fiduciary duty against Local 100, and remand that claim to the district court for further proceedings consistent with this opinion.